IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FREDERICK H. MITCHELL,                    :
                                          :
                    Petitioner,           :
                                          :
        v.                                :       Civil Action No.16-907-RGA
                                          :
ROBERT MAY, Warden, and                   :
ATTORNEY GENERAL OF THE                   :
STATE OF DELAWARE,                        :
                                          :
                    Respondents.[1]       :

## **MEMORANDUM OPINION**

Frederick H. Mitchell. *Pro se* Petitioner.

Kathryn J. Garrison, Deputy Attorney General of the Delaware Department of Justice,
Wilmington, Delaware. Attorney for Respondents.

March **12**, 2020
Wilmington, Delaware

---

[1]Warden Robert May has replaced former Warden G.R. Johnson, an original party to the case.
*See* Fed. R. Civ. P. 25(d).

ANDREWS, UNITED STATES DISTRICT JUDGE:

Presently pending before the Court is Petitioner Frederick H. Mitchell's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition"). (D.I. 1)  The State filed an Answer in opposition. (D.I. 6)  For the reasons discussed, the Court will dismiss the Petition.

## I.     BACKGROUND

In August 2014, Petitioner was indicted on charges of aggravated drug dealing, aggravated possession of heroin, second degree conspiracy, possession of marijuana, resisting arrest, tampering with physical evidence, failure to wear a seatbelt, and two counts of possession of drug paraphernalia. (D.I. 6 at 1)  On January 21, 2015, Petitioner pled guilty to possession of heroin in a Tier 4 quantity (as the lesser included offense of possession of heroin in a Tier 5 quantity) and second degree conspiracy. *Id.*  The Superior Court sentenced Petitioner to a total of seventeen years of Level V incarceration, suspended after eight years for eighteen months of Level III probation. *See Mitchell v. State*, 128 A.3d 994 (Table), 2015 WL 7575022, at *1 (Del. Nov. 24, 2015).  Petitioner filed a motion to reduce sentence on April 9, 2014, which the Superior Court denied. (D.I. 6 at 2)  He appealed his convictions and sentences, and the Delaware Supreme Court affirmed the Superior Court's decision on November 24, 2015. *See Mitchell,* 2015 WL 7575022, at *2.

In January 2016, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Rule 61. *See State v. Mitchell,* 2016 WL 1621580, at *1 (Del. Super. Ct. Mar. 22, 2016).  The Superior Court denied the Rule 61 motion. *Id.*  Petitioner appealed, and the Delaware Supreme Court affirmed the Superior Court's judgment in August 2016. *See Mitchell v. State,* 145 A.3d 508 (Table), 2016 WL 4191930, at *2 (Del. Aug. 4, 2016).

## II.    GOVERNING LEGAL PRINCIPLES

### A.  Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the

petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275

(1971).  The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i)  there is an absence of available State corrective process; or
>    (ii) circumstances exist that render such process ineffective to protect the rights of the
> applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to

give "state courts one full opportunity to resolve any constitutional issues by invoking one

complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at

844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).  A petitioner satisfies the

exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the

state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural

manner permitting the court to consider the claims on their merits. *Bell v. Cone*, 543 U.S. 447,

451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).  A federal legal claim is "fairly

presented" to state courts when there is: "(1) reliance on pertinent federal cases employing

constitutional analysis; (2) reliance on state cases employing constitutional analysis in like fact

situations; (3) assertion of the claim in terms so particular as to call to mind a specific right

2

protected by the Constitution; [or] (4) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

3

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

**B. Standard of Review**

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105,

115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to "factual issues," whereas the unreasonable application standard of § 2254(d)(2) applies to "decisions").

## III. DISCUSSION

Petitioner timely filed his § 2254 Petition, which asserts the following four Claims: (1) defense counsel provided ineffective assistance by advising him to enter a guilty plea without first obtaining a forensic report and/or investigating the drug evidence in his case; (2) the State failed in its duty to test the drugs and to provide him with the test results and chain of custody information before he entered his plea; (3) the Superior Court abused its discretion in sentencing him without a forensic report proving the alleged drugs were an illegal substance; and (4) defense counsel coerced him into pleading guilty by untruthfully telling him that there was a lab report that showed the substances had been confirmed as illegal drugs despite the fact that there was no lab report.

5

## A. Claim One: Ineffective Assistance of Counsel

In Claim One, Petitioner contends that defense counsel was ineffective for advising him to plead guilty without first investigating the chain of custody of the drugs and obtaining a forensic report concerning the result of any drug evidence testing. (D.I. 1 at 6) According to Petitioner, without such investigation, defense counsel had no way of knowing the true weight of the drugs or whether they were an illicit substance.[2] *Id.* Petitioner presented this same argument to the Superior Court in his Rule 61 motion, which denied the argument as meritless because Petitioner voluntarily, knowingly, and intelligently entered a guilty plea. *See State v. Mitchell*, 2016 WL 1621580, at *2 (Del. Super. Ct. Mar. 22, 2016). The Delaware Supreme Court affirmed that decision. *See Mitchell v. State*, 145 A.3d 508 (Table), 2016 WL 4191930, at *2 (Del. Aug. 4, 2016). Consequently, Petitioner will only be entitled to habeas relief if the Delaware Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional

---

[2]The police sent the drugs to a lab for testing, and the Superior Court docket indicates that the prosecutor provided "lab reports" to defense counsel on December 3, 2014. (D.I. 10-1 at 10, Entry No. 13) Petitioner entered his guilty plea on January 21, 2015. (D.I. 10-1 at 10, Entry No. 18) Nothing in the record indicates if defense counsel reviewed the lab report before Petitioner entered his guilty plea. However, the Rule 26(c) opening appellate brief written by defense counsel asserts, "The total number of bags of heroin found in the car was 5,374. The weight of the heroin was later determined to be approximately 71 grams of heroin." (D.I. 10 at 5)

norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* A petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). In the context of a guilty plea, a petitioner satisfies *Strickland*'s prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced. *See Strickland,* 466 U.S. at 698. Finally, although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

With respect to the first prong of the § 2254(d)(1) inquiry, a "state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court precedent, or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). In this case, the Delaware Supreme Court's decision was not contrary to clearly established federal law because it correctly identified the *Strickland/Hill* standard applicable to

7

Claim One.[3] *See Fahy v. Horn,* 516 F.3d 169, 196 (3d Cir.2008) (Pennsylvania Supreme Court's decision was not "contrary to" clearly established federal law because it appropriately relied on its own state court cases, which articulated the proper standard derived from Supreme Court precedent); *Williams,* 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court must also determine if the Delaware Supreme Court reasonably applied the *Strickland/Hill* standard to the facts of Petitioner's case. When performing the second prong of the § 2254(d) inquiry, the Court must review the Delaware Supreme Court's decision with respect to Petitioner's ineffective assistance of counsel claim through a "doubly deferential" lens.[4] *See Richter,* 562 U.S. at 105. Notably, when § 2254(d) applies, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* When assessing prejudice under *Strickland,* the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* And finally, when viewing a state court's determination

---

[3]The Delaware Supreme Court referenced "the familiar *Strickland* test" and cited to a Delaware case that articulated the *Strickland* test. *See Mitchell,* 2016 WL 4191930, at *1 (citing *Neal v. State,* 80 A.3d 935, 941-42 (Del. 2013)).

[4]As explained by the *Richter* Court,

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter,* 562 U.S. at 105 (internal citations omitted).

8

that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

On post-conviction appeal, the Delaware Supreme Court denied as meritless Petitioner's contention that defense counsel was ineffective for not obtaining a forensic analysis of the seized drugs before advising him to plead guilty. The Delaware Supreme Court determined that: (1) Petitioner's statements during his guilty plea colloquy belied his assertion that defense counsel's failure to obtain the test during the pre-plea time period coerced him into entering a guilty plea; and (2) Petitioner failed to demonstrate how counsel's failure to obtain a lab report prejudiced him. For the reasons set forth below, the Court concludes that this decision involved a reasonable application of the *Strickland/Hill* standard.

It is well-settled that "[s]olemn declarations in open court carry a strong presumption of verity" that create a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Here, the transcript of Petitioner's plea colloquy contains his clear and explicit statements that he discussed his case with defense counsel and he was satisfied with his opportunity to confer with defense counsel. (D.I. 10-1 at 30-32, 34, 36) Petitioner explicitly acknowledged that he and defense counsel had reviewed the evidence and penalties for the two charges to which he was pleading guilty. (*Id.* at 34) Petitioner understood the constitutional rights he was waiving by pleading guilty, and also understood that he faced a total maximum sentence of seventeen years if convicted at trial. (*Id.* at 32-36) In turn, the Truth-In-Sentencing Guilty Plea Form signed by Petitioner indicates that he knowingly and voluntarily entered into his plea agreement; he was satisfied with defense counsel's representation and that

9

defense counsel had fully advised him of his rights; he had not been promised anything not contained in the plea agreement; he was not forced or threatened to enter the plea agreement; and he knew he faced a possible total maximum sentence of seventeen years for the offense in the plea agreement. (D.I. 10-2 at 16)

Petitioner's unsupported allegations in this proceeding fail to provide compelling evidence as to why the statements he made during the plea colloquy should not be presumptively accepted as true. Consequently, the Delaware Supreme Court reasonably applied *Blackledge* in holding that Petitioner was bound by the representations he made during the plea colloquy and on the Truth-In-Sentencing form.[5]

In addition, Petitioner cannot demonstrate a reasonable probability that he would have gone to trial but for defense counsel's failure to obtain forensic testing of the drugs seized by the police. First, he does not assert that forensic testing of the drug evidence would have shown that the drugs were not heroin. Second, there was substantial evidence of Petitioner's guilt. The police recovered approximately 5,374 small bags of suspected heroin, weighing 80.67 grams,[6] and 27.6 grams of suspected marijuana, in the car Petitioner was driving; when the police stopped the car, Petitioner informed the officer that there was marijuana on the front seat that belonged to him. (D.I. 10-2 at 13) The police conducted a field test and the drugs tested positive for heroin and marijuana. (*Id.* at 13) The police also discovered in the car a digital scale to weigh the drugs and baggies to store the drugs. (*Id.* at 12-13) When subsequently interviewed

---

[5]Although the Delaware Supreme Court did not cite *Blackledge* when determining the voluntariness of Petitioner's guilty plea, the Delaware case to which it cited – *Somerville v. State*, 703 A.2d 629, 632 (Del. 1997) — did cite to *Blackledge*.

[6] This was not a lab weight, as it appears in the arrest affidavit.

by the police, Petitioner also admitted that he knew there was heroin in the car and that he touched it. (D.I. 10-1 at 47)  Text messages on Petitioner's cell phone were indicative of drug dealing.  (*Id*. at 48)

Third, Petitioner received a significant benefit by pleading guilty.  In exchange for his plea, the State allowed Petitioner to plead guilty to a lesser-included offense and dropped several charges, significantly reducing the amount of prison time he faced.[7]

Given all of these circumstances, Petitioner cannot satisfy the prejudice prong of the *Strickland/Hill* standard.  Accordingly, the Court concludes that the Delaware Supreme reasonably applied clearly established federal law in denying Claim One.

### B.  Claim Two: State's Duty to Provide Lab Report Before Entry of Plea

In Claim Two, Petitioner contends the State had a duty to test the drug evidence in his case and provide him with a report of the test results so that he could "craft an intelligent defense or enter an intelligent plea deal."  (D.I. 1 at 8)  Petitioner presented this Claim to the Superior Court, which denied it as waived by Petitioner's voluntary plea of guilty.  *See Mitchell*, 2016 WL 1621580, at *3.  Petitioner also presented Claim Two on post-conviction appeal, but the Delaware Supreme Court did not specifically address it.  *See Mitchell*, 2016 WL 4191930, at *1.

---

[7]Petitioner was indicted on the following charges: (1) Tier 5 aggravated possession of controlled substance (heroin); (2) Tier 4 drug dealing (morphine, opium, any salt, isomer or salt of an isomer thereof, or heroin); (3) second degree conspiracy; (4) possession of a controlled substance plus aggravator; (5) resisting arrest; (6) tampering with physical evidence; (7) possession of drug paraphernalia; (8) possession of drug paraphernalia; and (9) failure to wear a seatbelt. (D.I. 10-10)  He pled guilty to possession of heroin in a Tier 4 quantity (as the lesser included offense of possession of heroin in a Tier 5 quantity) and second degree conspiracy.

In these circumstances, the Court must review Claim Two *de novo*.[8] *See Breakiron v. Horn*, 642 F.3d 126, 131 (3d Cir. 2011)(explaining that a habeas claim must be reviewed *de novo* if the state's highest court did not adjudicate the merits of an exhausted claim that is otherwise properly before the court).

Although not entirely clear, Petitioner appears to contend that his plea was unintelligent because he did not have all the relevant information (*i.e.,* a lab report proving he possessed illegal drugs) when deciding whether to enter a guilty plea. Liberally construing this argument as corresponding with the *Brady v. Maryland* argument Petitioner presented on post-conviction appeal (D.I. 10-4 at 9-10), the Court views Claim Two as alleging that the State violated federal constitutional law by failing to provide Petitioner with a lab report concerning the drug evidence test results before he entered his plea.

Petitioner's argument is frivolous. Although the State is constitutionally required to disclose material exculpatory or impeachment evidence prior to a defendant's criminal trial,[9] the "Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ruiz*, 536 U.S. 622, 633 (2002). As the Supreme Court explained in *Ruiz*, "the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a

---

[8]*De novo* review means that the Court "must exercise its independent judgment when deciding both questions of constitutional law and mixed constitutional questions." *Williams v. Taylor*, 529 U.S. 362, 400 (2000)(Justice O'Connor concurring).

[9]*See Brady v. Maryland*, 373 U.S. 83, 87 (1963)(emphasis added).

12

defendant might labor." *Id.* at 630. Significantly, Petitioner does not contend that the lab report would have contained exculpatory or impeaching evidence. But even if it did, the State was not constitutionally required to disclose that evidence prior to the entry of Petitioner's plea. Thus, Claim Two does not warrant habeas relief.

Moreover, in *Tollett v. Henderson*, the Supreme Court held:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). A voluntary and knowing guilty plea bars a defendant from raising antecedent non-jurisdictional[10] constitutional violations "not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is established." *Menna v. New York*, 423 U.S. 61, 62 n. 2 (1975). Having just determined in its discussion of Claim One that Petitioner's guilty plea was voluntary, intelligent, and knowing, the Court alternatively concludes that Petitioner waived his right to assert the instant pre-plea *Brady*/evidence argument.

Accordingly, the Court will deny Claim Two as meritless.

---

[10]As explained by the Court of Appeals for the Tenth Circuit, the term non-jurisdictional is somewhat confusing; rather, "[t]he most accurate statement of the law would be … [that a] guilty plea waives all defenses except those that go to the court's subject-matter jurisdiction and the narrow class of constitutional claims involving the right not to be haled into court." *United States v. DeVaughn*, 694 F.3d 1141, 1193 (10th Cir. 2012).

## C. Claim Three: The Superior Court Sentenced Petitioner Without Lab Report

Claim Three asserts the following: the "Superior Court abused its discretion in sentencing [Petitioner] should have been provided with a forensic analysis report on the drugs to prove a positive test result, evidentiary value was not met." (D.I. 1 at 9) The Court liberally construes Claim Three as asserting an argument that the sentencing court violated Petitioner's due process rights by determining his sentence without referring to a forensic lab report to verify the drug identity and/or quantity.[11] In essence, Petitioner appears to contend that a lab report would be the only source of reliable or accurate information regarding the drug evidence.

The record reveals that Petitioner did not present Claim Three to the Delaware state courts as a federal constitutional issue. For instance, on direct appeal, counsel's Rule 26(c) brief[12] presented Petitioner's argument that the sentencing court violated his due process rights

---

[11]While the Petition does not assert any explicit federal due process argument with respect to Petitioner's sentence, Petitioner's Response to the State's Reply to his Motion to Amend actually contains as an exhibit a copy of the same federal due process/mitigating factors sentencing argument Petitioner presented on direct appeal. (D.I. 19) The Court does not view the due process argument exhibited in that Response as asserting a Claim to be reviewed in this proceeding. Rather, Petitioner attached the argument to his Response to illustrate why he believed amending his Petition with his three new proposed Claims would not be futile. The Court discusses Petitioner's request to amend later in the Opinion. *See infra* at Section IV.

[12]Recognizing that an attorney is "under an ethical obligation to refuse to prosecute a frivolous appeal," the Supreme Court has held that an attorney may withdraw from representing a client on appeal, so long as the attorney follows a procedure that "affords adequate and effective appellate review to [the] indigent defendant[ ]" and therefore "reasonably ensures that an indigent appeal will be resolved in a way that is related to the merit of that appeal." *Smith v. Robbins*, 528 U.S. 259, 272, 276-77 (2000). In *Anders v. California*, 386 U.S. 738 (1967), the United States Supreme Court articulated a procedure designed to protect an indigent appellant's constitutional rights when his attorney moves to withdraw. Pursuant to *Anders*, appellate counsel must conduct a "conscientious examination" of the case before seeking to withdraw from the case, and then file an appellate brief "referring to anything in the record that might arguably support the appeal." *Anders*, 386 U.S. at 744. In Delaware, motions to withdraw from representing an appellant are governed by Delaware Supreme Court Rule 26(c) which, in turn, is modeled on the procedure set forth in *Anders. See* Del. Sup. Ct. R. 26, Committee Comment. In this case,

by failing to weigh all applicable mitigating and aggravating factors. (D.I. 10 at 11-12) However, nothing in that particular argument referenced the sentencing court's failure to obtain or review a forensic lab report. In turn, on post-conviction appeal, Petitioner presented the three sentencing arguments: (1) the sentencing court abused its discretion by not reviewing or obtaining a forensic lab report concerning the drug evidence before determining his sentence; (2) the sentencing court sentenced him with a closed mind; and (3) the sentencing court failed to weigh the mitigating factors against the aggravating factors. (D.I. 10-4). None of them were asserted as a violation of his federal due process rights. Notably, Petitioner did not cite due process, the Constitution, or any other federal law in relation to the forensic test/sentencing argument he presented to the Delaware Supreme Court on post-conviction appeal, nor did he discuss the argument in terms that brought to mind a federal constitutional violation.[13] Basically, Petitioner's post-conviction appellate argument concerning the sentencing court's failure to obtain and/or review a forensic lab report merely asserted trial court error and failed to notify the state appellate court of the federal nature of his argument. *See, e.g., Baldwin v. Reese*, 541 U.S. 27, 33 (2004) (noting that the petitioner's reference "to provisions of the Federal Constitution in respect to other claims but not in respect to this one" did not "alert[] the court to the alleged federal nature of the claim.") This conclusion is supported by the fact that the Delaware

---

defense counsel filed an opening appellate brief under Rule 26(c) containing Petitioner's proposed arguments and a motion to withdraw, asserting that he "made a conscientious examination of the record and law and concludes that this appeal is wholly without merit." (D.I. 10 at 9)

[13]The federal caselaw Petitioner included in his post-conviction opening appellate brief involved ineffective assistance of counsel and the State's obligation to disclose exculpatory or impeaching evidence under *Brady v. Maryland*. None of the federal caselaw involved a state court's alleged abuse of discretion during sentencing.

15

Supreme Court viewed Petitioner's "lack of forensic report argument" as alleging that the "Superior Court sentenced him with a closed mind because it did not have any forensic test results before imposing sentence." *Mitchell*, 2016 WL 4191930, at *1. Construed in this manner, the Delaware Supreme Court held that the argument was improperly raised in a Rule 61 proceeding or, alternatively, was barred under Rule 61(i)(4) for being previously adjudicated on direct appeal.[14]

---

[14] On direct appeal, Petitioner argued that the Superior Court violated his due process right to a fair sentence by failing to weigh all applicable mitigating and aggravating factors. (D.I. 10 at 12) The Delaware Supreme denied Petitioner's argument as factually baseless without addressing any due process issue, explaining:

> Second, [Petitioner's] claim that the sentencing order does not refer to any of the aggravating factors the Superior Court relied upon is incorrect. The sentencing order identifies prior violent criminal activity as an aggravating factor. The Superior Court noted at the sentencing hearing that [Petitioner] had a prior conviction for Possession with Intent to Deliver, which is classified as a violent felony. The Superior Court also noted at the sentencing hearing that a large amount of heroin was found in [Petitioner's] car and that [Petitioner] changed his statements to the police over time in order to minimize his involvement.
>
> *          *          *
>
> Finally, [Petitioner's] claim that the Superior Court failed to consider the applicable mitigating factors and weigh those factors against the aggravating factors is without merit. Evidence of mitigating factors—including [Petitioner's] employment history and cooperation with authorities—was presented to the Superior Court. The fact that the Superior Court was more swayed by other factors—including [Petitioner's] previous conviction Possession with Intent to Deliver, the large amount of heroin found in [Petitioner's] car, and [Petitioner's] attempts to minimize his involvement—does not mean that the Superior Court failed to consider the mitigating factors or sufficiently weigh those factors.

*Mitchell*, 2015 WL 7575022, at *2. The Court has not found any reference to Petitioner's "closed mind" argument in the Rule 26(c) opening appellate brief or in the Delaware Supreme Court's appellate decision.

Given this record, the Court concludes that Petitioner did not fairly present the instant federal due process/sentencing argument to the Delaware Supreme Court on direct or post-conviction appeal. Consequently, Claim Three is unexhausted.

At this juncture, any attempt by Petitioner to raise Claim Three in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1). *See DeAngelo v. Johnson*, 2014 WL 4079357, at *12 (D. Del. Aug. 15, 2014). Although Rule 61(i)(1) provides for an exception to the one-year time limitation if the untimely Rule 61 motion "asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final," no such right is implicated in the instant Claim. Similarly, the exceptions to Rule 61(i)(1)'s time-bar contained in Rule 61(i)(5) and (d)(2) do not apply to Petitioner's case, because he does not allege actual innocence, lack of jurisdiction, or that a new rule of constitutional law applies to this Claim.

Since Petitioner is precluded from exhausting Claim Three at this point, the Court must treat the Claim as technically exhausted but procedurally defaulted. Consequently, the Court Court cannot review the merits of Claim Three absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the Claims are not reviewed.

Petitioner has not demonstrated cause because he does not explain why he did not present Claim Three in federal due process terms on post-conviction appeal. Although the absence of cause obviates the Court's obligation to address prejudice, the Court nevertheless finds that Petitioner cannot establish prejudice. The Due Process Clause prohibits a sentencing court from

---

17

relying on materially false or unreliable information when imposing a sentence. *See United States v. Tucker,* 404 U.S. 443, 447–49 (1972); *Townsend v. Burke,* 334 U.S. 736 (1948). The possibility that the sentencing court in this case may have determined Petitioner's sentence without referring to a forensic report regarding the drug evidence[15] does not demonstrate that the sentence was based on misinformation.[16] Notably, the sentencing court imposed the sentence for aggravated possession of heroin in a Tier 4 quantity based on the facts established at the guilty plea colloquy by Petitioner's own admissions. The Court has already concluded that Petitioner's guilty plea was voluntary and intelligent. Petitioner has not provided any basis for the Court to question the veracity of his plea colloquy statement that he was, in fact, guilty of possessing

---

[15]The Superior Court docket indicates that a drug test was performed, and a lab report concerning the test results was completed, one month before Petitioner was sentenced. (D.I. 10-8 at 2, Entry Nos. 13 & 18) While the sentencing transcript does not contain any explicit reference to that drug test report, the Court cannot definitively state that the sentencing court did not review the report.

[16]The Court construes Claim Three as asserting that the sentencing court denied Petitioner due process in calculating his sentence without referring to a forensic drug report. In other words, the absence of a drug report is the source of the unreliability of the sentencing court's determination. However, distilled to its core, this argument could also be construed as asserting that the sentencing court violated Petitioner's due process rights by relying on his plea colloquy admission that he possessed the type and quantity of drugs for which he was convicted without double-checking the veracity of his admission against the results in a forensic drug test report. In other words, Petitioner is arguing that his admission regarding the drug identity and quantity was unreliable. However, this alternate argument is meritless. The Court has already concluded that Petitioner's guilty plea was voluntary. Petitioner has not provided any evidence providing a reason to question the quantity and identity of drugs which he admitted, nor does he assert that a report on the drug test results would contradict the quantity and identity of the drugs to which he admitted. Simply stated, Petitioner has not demonstrated that his admission was inaccurate or unreliable. Consequently, to the extent Petitioner's argument should be construed as asserting that the sentencing court violated his due process rights by relying on unreliable information he admitted during the plea colloquy, the argument is meritless. *See, e.g., McReynolds v. U.S.,* 2015 WL 4545653, at *12 (S.D. Ala. July 28, 2015)(noting that, in the guilty plea context, "[a]ny fact admitted to by a defendant need not be proven to a factfinder.").

18

heroin in a Tier 4 quantity. In addition, Petitioner does not allege that a forensic drug report would have contained exculpatory evidence regarding the quantity and/or identity of the drugs. For all of these reasons, Petitioner cannot demonstrate how the Superior Court's failure to double-check the amount and identity of the drug he himself conceded before determining his sentence violated his right to due process.

Finally, Petitioner has not satisfied the miscarriage of justice exception to the procedural default doctrine because he has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claim Three as procedurally barred from federal habeas review.

### D. Claim Four: Defense Counsel Coerced Petitioner to Plead Guilty

In his final Claim, Petitioner asserts that defense counsel coerced him to plead guilty by telling him there was a forensic report indicating a positive test result for the drugs, and that he would lose if he went to trial. (D.I. 1 at 11) According to Petitioner, defense counsel knowingly deceived him because no such test results existed. *Id.*

The record reveals that Petitioner did not present Claim Four to the Delaware state courts on post-conviction appeal.[17] As a result, Claim Four is unexhausted. At this point in time, any attempt by Petitioner to raise Claim Four in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1), and none of the exceptions to Rule 61(i)(1)'s bars apply here. Consequently, the Court must treat the Claim as procedurally

---

[17]As the State points out, Claim Four is at odds with Petitioner's consistent underlying argument that defense counsel never obtained a forensic report concerning the results of any drug evidence tests.

defaulted, meaning that the Court cannot review its merits absent cause and prejudice, or a showing that a miscarriage of justice will occur if Claim Four is not reviewed.

Petitioner has not demonstrated cause because he does not provide any reason for failing to present the instant Claim to the state courts. In the absence of cause, the Court will not address the issue of prejudice. Moreover, the miscarriage of justice exception to the procedural default doctrine is inapplicable because the Petitioner has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claim Four as procedurally barred from federal habeas review.

## IV.    AMENDMENT REQUEST

In his AEDPA Election Form, filed nine months after the State filed its Answer,[18] Petitioner indicates he wishes to amend his Petition with the following three additional ineffective assistance of counsel claims: (1) defense counsel failed to provide him with a copy of the toxicology and chain of custody report for the drug evidence ("Claim 5"); (2) defense counsel failed to file a motion to dismiss the Tier 4 possession of heroin charges based on a lack of evidence tying him to those drugs ("Claim 6"); and (3) defense counsel failed to challenge the reliability of the State's evidence by filing a motion to suppress evidence, a motion for "alignment," or a motion to dismiss the Tier 4 possession of heroin charge ("Claim 7"). (D.I. 17 at 3-4)

---

[18]The Court issued its initial AEDPA Order on December 20, 2016, which informed Petitioner of his rights and directed him to fill out the attached AEDPA Election Form indicating how he wished to proceed. (D.I. 3) Petitioner did not file the AEDPA Election Form within the allotted thirty days. The Court waited an additional few months and, after still not receiving the form, the Court issued an Order on April 10, 2017 directing the State to Answer the Petition. (D.I. 4)

Amendments to habeas petitions are governed by Federal Rule of Civil Procedure

15. *See United States v. Duffus*, 174 F.3d 333, 336 (3d Cir. 1999). Since federal habeas corpus

actions are subject to a one-year statute of limitations,[19] a motion to amend a timely filed

habeas petition "will be denied where it is filed after that period expires unless the

proposed amendment relates back to the date of the original pleading within the meaning of

[Rule 15(c)]." *Howard v. United States*, 533 F.3d 472, 475–76 (6th Cir. 2008). Rule 15(c)

permits relation-back of a proposed amendment to a habeas petition when both the pleading and

the proposed amendment arise out of the same "conduct, transaction, or occurrence." Fed. R.

Civ. P. 15(c)(1)(B). In the habeas context, an amendment relates back to a habeas petition

under Rule 15(c) "[s]o long as the original and amended petitions state claims that are tied to

a common core of operative facts." *Mayle v. Felix*, 545 U.S. 644, 664 (2005). A claim will not

relate back, however, to the extent that it "asserts a new ground for relief supported by facts that

differ in both time and type from those the original pleading set forth." *Id.* at 650. As explained

by the Third Circuit:

> In searching for a common core of operative facts in the two
> pleadings, courts should remain aware that the touchstone for
> relation back is fair notice, because Rule 15(c) is premised on the
> theory that a party who has been notified of litigation concerning a
> particular occurrence has been given all the notice that statutes of
> limitations were intended to provide. Thus, only where the
> opposing party is given fair notice of the general fact situation and
> the legal theory upon which the amending party proceeds will
> relation back be allowed. For example, we have held that
> amendments that restate the original claim with greater particularity
> or amplify the factual circumstances surrounding the pertinent
> conduct, transaction, or occurrence in the preceding pleading fall
> within Rule 15(c) because the opposing party will have had
> sufficient notice of the circumstances surrounding the allegations
> contained in the amendment.

---

[19]*See* 28 U.S.C. § 2244(d)(1).

*United States v. Santarelli*, 929 F.3d 95, 101 (3d Cir. 2019)(cleaned up and citations omitted).

A court may also deny leave to amend where the amendment would be futile. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Middlebrook v. Carroll*, 470 F. Supp. 2d 411, 419 (D. Del. 2007), *aff'd,* 293 F. App'x 858 (3d Cir. 2008). An amendment is futile if the proposed pleading could not withstand a motion to dismiss. *See City of Cambridge Re. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 278 (3d Cir. 2018). Examples of futility in the habeas context include time-barred amendments that do not relate back to the original petition, procedurally barred amendments, and amendments lacking arguable merit. *See Bernard v. United States*, 2019 WL 3719405, at *2 (D.N.J. Aug. 5, 2019)(noting that amending with time-barred claim that does not relate back would be futile); *Hall v. Phelps*, 641 F. Supp. 2d 334, 342 (D. Del. 2009).

In this case, although the Petition is timely, Petitioner filed his amendment request long after the expiration of AEDPA's limitations period. Consequently, Petitioner's three new proposed Claims are time-barred and, therefore, impermissible amendments, unless they relate back to the original Petition.

### A. Claim Five

The premise of proposed Claim Five is that defense counsel provided ineffective assistance by failing to provide Petitioner with a copy of the forensic report containing the drug test results. This argument is similar to assertions raised in Claim One (defense counsel was ineffective for advising Petitioner to enter a guilty plea without first obtaining a forensic report) and Claim Four (defense counsel provided ineffective assistance by untruthfully telling Petitioner there was a forensic report indicating a positive test result for the drugs, and that he would lose if he went to trial, because Petitioner asserts that no such test results existed). Since

22

these three Claims arise out of a common core of operative facts, proposed Claim Five is not time-barred.

Nevertheless, the Court will deny Petitioner's request to include Claim Five in the instant Petition because such an amendment would be futile. The Court has concluded that Claim One lacks merit and that Claim Four is procedurally barred from federal habeas review. Given proposed Claim Five's similarity to both, as well as Petitioner's failure to exhaust state remedies for Claim Five, the Court concludes that Claim Five is procedurally barred and lacks arguable merit.

**B. Claims Six and Seven**

Petitioner's request to amend his Petition to include Claims Six and Seven is similarly unsuccessful. First, Claims Six and Seven cannot escape being time-barred under the relation-back doctrine because they are not tied to a common core of operative facts with any of the Claims in the original Petition. The ineffective assistance of counsel allegations in the original Petition focus on defense counsel's failure to obtain a copy of the drug evidence test results, and do not even remotely refer to the allegations in Claims Six and Seven regarding defense counsel's failure to file any pre-plea or pre-trial motions. *See United States v. Duffus*, 174 F.3d 333, 337 (3d Cir. 1999)(a completely new claim of ineffective assistance of counsel does not necessarily relate back to an earlier general ineffective assistance of counsel claim). Second, even if Claims Six and Seven were not time-barred, granting Petitioner leave to include them in his Petition would be futile because they are procedurally barred from habeas review. The record reveals that Petitioner did not present proposed Claims Six and Seven to the Delaware state courts in his Rule 61 proceeding, he is barred from returning to state court to exhaust state

remedies for the Claims, and he has not demonstrated any cause and prejudice for excusing his default, nor presented new reliable evidence of his innocence.

### C. Futility

In sum, Claims Five, Six, and Seven either lack arguable merit, are time-barred, or are procedurally barred. Therefore, the Court will deny Petitioner's request to amend on the basis of futility.

## V. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## VI. CONCLUSION

For the reasons discussed, the Court concludes that the Petition must be denied. An appropriate Order will be entered.